## LAWRENCE *v.* NORTON.[*]

*(Circuit Court, N. D. Texas.* December, 1882.)

ASSIGNMENT TO CREDITORS.

An assignment for the benefit of creditors, under the laws of Texas, wherein the assignor has expressly reserved an interest to himself, to the exclusion of his creditors, is, on its face, null, void, and of no effect.

In Equity. On demurrer.

This action is one for damages for trespass, in seizing and converting certain goods, alleged by the plaintiff to have belonged to him. Plaintiff sets out his ownership, as derived under a certain deed of assignment, in these words and figures, to-wit:

*The State of Texas, Kaufman County:* This indenture made the twenty-fourth day of October, A. D. 1881, between S. W. Wallace of the first part, I. G. Lawrence of the second part, and the several creditors of the party of the first part, who shall hereafter accede to these presents, of the third part, witnesseth: That whereas the party of the first part is indebted to divers persons in considerable sums of money, which he is at present unable to pay in full, and he is desirous to convey all his property for the benefit of his creditors: Now, the party of the first part, in consideration of the premises, and of one dollar paid to him by the party of the second part, hereby grants, bargains, sells, assigns, and conveys, unto the party of the second part, and his heirs and assigns, all his lands, tenements, hereditaments, goods, chattels, and choses in action, of every name, nature, and description, wheresoever the same may be, except such property as may be by the constitution and laws of the state exempt from forced sale. To have and to hold the said premises unto the said party of the second part his heirs and assigns. But in trust and confidence, to sell and dispose of said real and personal estate, and to collect said choses in action, using a reasonable discretion as to the time and mode of selling and disposing of said estate, as it respects making sales for cash or on credit, at public auction or by private contract, taking a part for the whole, when the trustee shall deem it expedient so to do. Then in trust to dispose of the proceeds of said property in the manner following, viz.:

*First.* To pay the costs and charges of these presents, and the expenses of executing the trusts herein declared, together with all taxes which are a charge upon any of said property.

*Second.* To distribute and pay the remainder of the said proceeds to and among all the parties of the third part who will accept thereof, in full satisfaction of their claims against said party of the first part, ratably, in proportion to their respective debts.

*Third.* To pay over any surplus, after paying all parties of the third part who shall accede hereto, as aforesaid, in full, to the party of the first part, his executors, administrators, or assigns; and the party of the first part hereby

[*]Reported by Joseph P. Hornor, Esq , of the New Orleans bar.

constitutes and appoints the party of the second part his attorney, irrevocable, with power of substitution, authorizing him in the name of the party of the first part, or otherwise, as the case may require, to do any and all acts, matters, and things to carry into effect the true intent and meaning of these presents, which the party of the first part might do if personally present; and the party of the second part, hereby accepting these trusts, covenants to and with each of the other parties hereto, to execute the same faithfully; and the party of the first part hereby covenants with the said trustee, from time to time, and at all times when requested, to give him all the information in his power respecting the assigned property, and to execute and deliver all such instruments of further assurance as the party of the second part shall be advised by counsel to be necessary in order to carry into full effect the true intent and meaning of these presents; and the parties of the third part, by acceding hereto, and by accepting the benefits herein conferred, hereby and thereby agree to and with the said party of the first part, to release him from any and all claim or claims, debt or debts, demand or demands, of whatever nature, which they respectively have and hold against him; and this assignment is made for the benefit of such of the parties of the third part only as will consent to accept their proportional share of the said estate of the said party of the first part, and discharge him from their respective claims.

Witness our hands, this twenty-fourth day of October, A. D. 1881.

[Signed] .

S. W. WALLACE,
I. G. LAWRENCE.

Then follow separate acknowledgments and lists of liabilities and assets.

*Henry & Hill*, for complainant.

*Crawford & Smith*, for defendant.

PARDEE, J. The demurrer presents the question whether the foregoing assignment is fraudulent on its face, and therefore void as against the assignor's creditor. If it is valid, and shall be carried out, and the trust administered according to the terms specified, its effect against creditors who do not grant the exacted release will be to delay them, according to the discretion of the assignee, for an indefinite period, in their remedies against the property upon faith of which they gave credit, if their remedies are not entirely lost; and, finally, after this indefinite delay, remit them to proceedings against their original debtor, after his assets have been converted into ready cash and put in his pocket beyond the reach of writs of *fieri facias*.

In short, in such case, the debtor has enacted a forced stay law, during the discretion of his agent, to enable him to convert his property into such convenient shape that he may enforce other terms (to suit his convenience) with his already delayed creditors. If the assignment is held valid, but the trust is administered according to the state laws, which, it is argued, have the effect to validate all as-

signments, curing all frauds, in act or intent, and, to a certain extent, making a contract for the assignor, the effect is practically the same, except that if there is any surplus, after preferred creditors and expenses, etc., are paid, it may be paid into court to be litigated for.

In this latter case, as to the administration under the state law, a number of curious queries suggest themselves, which, if they were satisfactorily answered, might induce creditors to view assignments under the law with more favor. When and where is the assignment to be recorded? When is it to take effect? How long may the assignee carry it in his pocket? Suppose that no creditor accepts the terms of the debtor, could the assignment be set aside? If so, when? After the full administration of the assignee, or at the expiration of four months? When is a dividend to be paid to accepting creditors? When the assignee can pay 10 per cent. of the accepting creditors' claims, or when he has funds in hand sufficient to pay 10 per cent. "of the debt due by the assignor?" Suppose the assignee can collect only enough, after reasonable compensation, necessary costs and expenses, and attorneys' fees, at discretion, are paid, to pay 9 per cent. of the debts due by the assignor?

Many other questions suggest themselves, but all, including the foregoing, throw no light on this case, they being referred to only because the policy of the law has been discussed at the bar, and very ably justified and defended too.

The assignment aforesaid makes several dispositions and conditions in conflict with the law which is relied on to maintain it, but the chief objection made to its validity is that the assignment is not complete of the assignor's interest, but that the assignor reserves an interest in his own favor in the property assigned.

The act of March 24, 1879, (Texas Laws, Acts 1879, *c.* 53, p. 57,) provides:

" Section 1. That every assignment made by an insolvent debtor, or in contemplation of insolvency, for the benefit of his creditors, shall provide, except as herein otherwise provided for, a distribution of all his real and personal estate, other than that which is by law exempt from execution, among *all* his creditors in proportion to their respective claims ; and, however made, shall have the effect aforesaid, and shall be construed to pass all such estate, whether specified therein or not, and every assignment shall be proved or acknowledged and certified, and recorded in the same manner as is provided by law in conveyance of real estate or other property.

" Sec. 3. Any debtor, desiring so to do, may make an assignment for the benefit of such of his creditors, only, as will consent to accept their proportionate share of his estate, and discharge him from their respective claims ; and,

in such case, the benefit of the assignment shall be limited and restricted to the creditors consenting thereto ; the debtor shall thereupon be, and stand, discharged from all further liability to such consenting creditors, on account of their respective claims, and, when paid, they shall execute and deliver to the assignee, for the debtor, a release therefrom."

Upon the construction of these two sections, and upon the common law, the validity of the aforesaid assignment depends. See article 3128, Rev. Code Texas.

It seems that by the section aforesaid two classes of assignments are allowed : Under the first section, assignments for the benefit of all the creditors, which are aided by the law, and naturally would be favored by the court; under the third section, assignments for the benefit of preferred creditors, who are preferred on their own election under stress of a penalty forfeiting their whole claim, which assignment is not in terms aided by law, and naturally is not favored by the courts. Prior to the act of 1879, an assignment, such as the one now under consideration, would have been adjudged void on its face, because therein the assignor reserved an interest in the estate assigned. See the leading cases in Texas—*Baldwin* v. *Peet*, 22 Tex. 708, and *Bailey* v. *Mills*, 27 Tex. 434. Also, *Barney* v. *Griffin*, 2 N. Y. (Comst.) Ct. App. 365; *Leitch* v. *Hollister*, 4 N. Y. (Comst.) Ct. App. 211.

In the last cited case it is said :

"The effect of such an assignment is to withdraw the property of the debtor from legal process, and to compel creditors to await the execution of the trust before they can reach the surplus reserved to the former. As those who are excluded from the benefits of the assignment cannot enforce its execution, they are necessarily hindered and delayed, and consequently, in legal contemplation, defrauded. It is of no consequence whether the surplus is large or small, or whether anything remains after the payment of the preferred creditors; the creation of the trust shows that a surplus was in the contemplation of the parties, and its reservations for the benefit of the assignor is a fraud upon creditors."

These cases, and the arguments so clearly expressed, have lost no force by lapse of time. The statute aforesaid was passed in the light of them, and I think it must be construed in harmony with them. Counsel have handed in two late decisions of the supreme court of Texas, not yet reported, in which that learned tribunal has passed upon two cases arising under the statute aforesaid. The first—*Blum* v. *Wellborne*—goes to the extent of holding that an assignment that evidences an intention to pass to the assignee all of the property of the debtor, subject to forced sale, for the purpose of distribution

among creditors, and is executed in substantial compliance with the requirements of the act, will be aided by the law as to form, and will not be avoided by fraud between the assignor and assignee in secreting and appropriating portions of the property assigned.

In the second case—*Donalu* v. *Fish Brothers*—it is held that the law cannot make an assignment for the debtor, but that it aids an assignment which evidences an intention of the debtor to comply with its provision; that the provisions of the third section of the act of 1879 must be construed in harmony with the principles laid down by the courts of the several states, in which it has been held, in the absence of a statute, that such restrictions upon the rights of the creditors generally might be imposed by the debtor; and that an assignment containing such restrictions, which does not of itself, or with the aid of the law, transfer all the debtor's property for the benefit of his creditors, is void upon its face.

Following these two cases, as to the construction to be given to the act of 1879, keeping in mind that the law cannot make a contract for the debtor, and that where a debtor seeks to force exactions from his creditors under the third section of the act, he must resign all of his property not exempt, I feel warranted in holding, under the lights to which the court refers me, and hereinbefore cited, that as in the assignment before the court, the assignor has expressly reserved an interest to himself, to the exclusion of his creditors, the same is, on its face null and void, and of no effect.

Under the principles of the civil law, declaring that the property of the debtor is the common pledge of all the creditors, which principles are sound in justice and equity, all laws and acts preferring creditors ought to be strictly construed, and always avoided, when not in strict compliance with the terms of the law. On general principles, therefore, I am of the opinion that the third section of the act of 1879, allowing an unfair and partial assignment, should be strictly construed, and, therefore, that the assignment in this case should be held null and void.

The other points argued need not be considered.

The demurrer to the amended original petition is sustained.

McCORMICK, J., concurs.